Thank you. Final matter is Rosen versus Superintendent Mahanoy. I don't know how many cases in front of me back in my other life, but I was when I saw your name, I don't think you've ever argued in front of me in this court, have you? No, sir. No, sir. It is a little bit of deja vu. Hopefully you do better with your arguments than you did with your trials. I was expecting that. Golly, that's... May it please the court. Carl Schwartz, along with John Chosky, with the firm of Wiseman and Schwartz. For the appellant, Adam Rosen, I would ask for four minutes for rebuttal. Yes, just that. Obviously, we've got input to deal with here. Yes. And what is the Supreme Court case or cases that you're relying upon for establishing the rule that would allow us to overturn the Pennsylvania Supreme Court's case on these? It's the rule of Buchanan that this court, with your honor sitting on as one of the panel members and an opinion authored by Judge Chertoff in 2004. But that's not a Supreme Court case. Well, except that Buchanan is the Supreme Court case. And this court aptly applied that case, aptly applied the rule of Buchanan that holds that although a defendant who puts forward a mental illness defense and calls an expert who has evaluated him, although he waives his right to assert his Fifth Amendment privilege to remain silent, to not be a witness against himself, and must submit to an interview with a commonwealth or government expert, that interview, the stuff of that interview is limited to rebuttal of the psychiatric defense. And I will tell the court that your application of the rule of Buchanan was not explicitly, but certainly endorsed by the United States Supreme Court nine years later in the case of Kansas v. Cheever where the court referred to the rule of Buchanan in language that was remarkably resonant of the Gibbs opinion and said that that interview or that the information disclosed by the defendant is limited only, using the terms only, to rebuttal and described that as the rule of Buchanan, a case that predated the motion that was filed in this case. And by the trial court's failure to apply that rule, what happened here is a defendant in an admittedly troubling case was precluded from testifying in his own defense in a case where there were no other live eyewitnesses. In a case where the fact finder determined that at the start of this incident with his wife, he did not think about killing his wife. He did not premeditate and accepted the possibility, if not likelihood, that the wife instigated the physical confrontation. In a case where the medical examiner, Dr. Hood, who I know your Honor is familiar with, testified... Everybody in this case. What's that? I'm familiar with everybody in this case. Right, right. Where Dr. Hood testified that you can't really tell the story from the injuries, other than it was a frenzied incident. You would need other evidence to tell the story, yet the trial court, the fact finder, found first degree, as he said, based explicitly and wholly on the injuries. So what could have been more important in a case like this, where a man who was on trial for his life, who has acknowledged the homicide, who has acknowledged essentially that he must pay for the homicide, merely sought his right to testify to convince 12 jurors that he never intended to kill his wife. And the Pennsylvania Supreme Court, your Honors, identified the correct rule. They talked about limited waiver, in their opinion, yet they misapplied it in a very gross and obvious way. First of all, they recognized Gibbs, but held that they were not bound by Gibbs. And Gibbs is this court's holding under remarkably similar facts. In Gibbs it involved a compelled evaluation by Dr. Sadoff, then a second trial where the mental illness defense that had been raised initially was no longer raised, yet the Commonwealth was permitted to use that evaluation. And this court held the rule of Buchanan precluded its use. Yes, sir. I mean, isn't part of the question whether Buchanan is, you know, if it's a limit or if it's an example of, I mean, I'm reading this one part of Buchanan that says, if a defendant requests such an evaluation or presents psychiatric evidence, then at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested. Maybe if that's at the very most, then the rule of Buchanan works for you. But right now as I read Buchanan, it says at the very least. And so when it says at the very least, and you need to show a clearly established Supreme Court law, and this one is setting the low bar, not the high bar, how does that help you if you need to set the high bar? I have a couple of responses to that. First, determining that what I am suggesting is the rule of Buchanan, which is not my suggestion, it was this court's suggestion. But we still. No, no, I'm with you on that. But what I'm saying is initially, as an initial matter, it would require, which this court should not do, overruling Gibbs. Because this court found that Buchanan was a clearly established Supreme Court law. And I will say this. The Buchanan case creates the construct wherein this type of evidence, evidence taken, evidence that's compelled, that traditionally would have been seen as taken in violation of the Fifth Amendment. But there's a carve-out, the animating rationale being that we need to hear the defendant's statements for whatever diagnoses or expert opinions that the defendant's expert may make so that we can contradict it. So what the Buchanan court said was here is the construct wherein this type of evidence may be compelled. And the answer to your question as to what was the correct interpretation and application, not extension, was provided by the United States Supreme Court in 2013 in Cheever. Because the Cheever court used the term, as this court did, only. The court said that it is limited only to this rebuttal purpose. And that's what makes Buchanan, I would say, in passing. So it's kind of Buchanan plus Cheever. Well, no. It's not plus Cheever because what Cheever said was this is the rule of Buchanan. If this is the rule of Buchanan. But in Cheever, the mental status was raised in both trials, correct? Yes, sir. It was. To me, that really comes down to is a waiver of mental status defense in the first trial. Does it carry over to the second trial when that defense is not put into play by the defendant, correct? Correct. And it looks as if certain cases like Gibbs talk about cases in chief. But I don't know of any particular case that talks necessarily that says for purposes of impeachment, if this person were to have gotten on the stand, that you can't bring it in. And I can address that. So let me say at the outset that this impeachment discussion is often preceded with a citation to Harris versus New York. A case in which, I mean, I want to identify all the hidden goblins against my argument. A case in which the United States Supreme Court held that statements taken in violation of Miranda, while they can't be used in a case in chief, they can be used to impeach. And as we said in our briefing, and let me step back and say there's no talismanic significance to impeachment evidence. As this court knows, it has seen many cases come through the courts in Pennsylvania. Impeachment evidence is often more powerful and more devastating to a defense than is direct evidence, especially in regard to case law such as Lively and Brady that talks about that kind of evidence being usable substantively. The distinction is not so much between impeachment and substantive evidence as it is between compulsion and non-compulsion. Harris, cases like Harris, are cases in which there's no issue as to whether the statement was compelled. So there's no issue around the traditional basis of the Fifth Amendment. Were you compelled to be a witness against yourself? Voluntariness wasn't raised in that case. Contrast a case like Harris with another case that we cited in our brief, New Jersey v. Portash, which is an impeachment case. But the court found, and this is a United States Supreme Court case, and it's clearly established Supreme Court law, clearly established before this trial court ruling. And the court found no significance in terms of admissibility to the fact that it was impeachment evidence. The significance was, is it compelled or is it not compelled? And the court made the determination that it was compelled because there was a coercive sanction. There, the coercive sanction was a contempt citation for failing to testify before the grand jury. You'll recall that Portash was a case where immunized grand jury testimony was, a court was asked by the government to allow that immunized testimony to come in, not in the case in chief, but like Harris, and they argued Harris, to impeach. And the court said, no, no, it's not about impeachment. I mean, I'm not saying they use these words, but this is, it's not about impeachment versus substance and evidence. One can be just as powerful as the other. It's about which, you know, traditionally violates the core concern of the Fifth Amendment. And because there was a coercive sanction implicit in the grand jury testimony, just as there was here. Mr. Rosen was in effect told that you either speak to the expert or if you don't speak to the expert, you don't get to put on your defense. So if I'm tracing your argument right, you're basically saying that when we look for clearly established law, there's a lot of attributes that each case have. You're saying, you're suggesting, if I'm tracing this correctly, that there's two axes, compulsion and impeachment. And you're saying, actually, the impeachment is a false positive. There's only one axis that matter, compulsion. And so when we look for clearly established law, we should only look for compulsion, and we shouldn't look for the presence of that impeachment prong in clearly established Supreme Court law. Do I trace that back or not? Well, I think the fact of impeachment, I would agree with your honor, the fact of the impeachment is of considerably less relevance than the fact of compulsion. If there's no Supreme Court law in the impeachment category for this case, second trial, et cetera, et cetera, that to you is not the variable that matters. Well, I think there is. I think Portesh speaks right to that question. Now, as to whether, I mean, this court in Johnson v. Lamas, even in Wood v. Woodall, the United States Supreme Court said, look, it can be clearly established federal law without being materially indistinguishable facts. I mean, you can have components of a claim that are based on fundamental constitutional principles, as interpreted by the United States Supreme Court.  What cases like, and I know you haven't asked me about this, but I think your honors, Judge Fitzgerald, I think your question addresses this kind of, you know, the White v. Woodall conundrum. Like, I mean, are we extending? Are we expanding? And that's not what happened. That is not what is happening here. I mean, this case leads closer to this court's case in Washington v. Secretary, where there was an application of clearly established federal constitutional law, albeit in more than one component, than White v. Woodall, where they were trying to take a constitutional principle or a constitutional rule that had been applied at the trial stage, and they were trying to apply it at the sentencing stage. And what Judge Scalia, I believe, held or wrote in his majority opinion was, you're talking about a different proceeding. You're talking about grafting something, a constitutional rule, from one type of proceeding on to another type of proceeding. That's not what we're asking for here. What we're asking for here is terribly straightforward and I'll say in passing that, you know, and this is all over our briefing, I also think that the seminal case of Estelle v. Smith is virtually on all fours here. I mean, the reason I lead with Buchanan is because, you know, there was this whole issue in this appeal about the Commonwealth giving you a document that's not in the record that suggested the defendant was given Miranda warnings. And frankly, I think a lot of, you know, I think a lot of that is of little moment. So I thought, you know, I'm not going to talk about the Miranda issue. But that is a second basis and, you know, this case lines up with Estelle in a very direct way, as in Estelle,  you know, here there's no record evidence of warnings even being given. And assuming they were, there's no sense that the defendant was advised of the circumstances under which his statement could be used. In fact, the record is devoid of Miranda. Then at a proceeding where nothing relating to the mental illness defense is raised, that examination is ruled to be admissible. In that way, this case is, you know, is more on all fours with Estelle than Gibbs was. I mean, you know, I think sometimes we sort of have to step back. And I think if we do, you know, what we find is in a case where the Pennsylvania Superior Court held that the absence of this, that if this was an erroneous evidentiary ruling, it most certainly would have had to have been prejudicial. And then to deal with that problem, the decision that your honors are now having to deal with, which is the Pennsylvania Supreme Court decision. I thought the strongest case or the case that you relied on the most was Buchanan. Yes, I think that's right. Because I think Buchanan is good law without regard to the issue of Miranda. I think it's what Buchanan holds and what this, as this court aptly found, is that this kind of evidence is limited to rebuttal of the psychiatric defense. Yes. This is a jet of Jake. Yes. Could be. Good afternoon, your honors. Adrian Jackie, on behalf of the Commonwealth in this case. As this court is well aware, state court decision is contrary to clearly established precedents. Only if it arrives at a conclusion that is opposite to one reached by the United States Supreme Court, not any circuit court, but the United States Supreme Court on a question of law or fact with materially indistinguishable facts from a relevant Supreme Court case. If this court has to attempt to extend the precedent that is being set forth by the petitioner, then that's not clearly established federal law applicable to this case. The defendant or excuse me, the petitioner must demonstrate that the United States Supreme Court precedent requires a contrary outcome to that reached by the state court here. And where the court gives the Supreme Court gives no clear answer to the question presented. It cannot be said that the state court unreasonably applied United States Supreme Court precedent. I want to address the cases set forth by the petitioner here. Independence brief. He relies primarily on Estelle B. Smith today. He's relying, among other cases, including Buchanan versus Kentucky. I would submit that none of them. Gibbs held it. What? The Supreme Court cases clearly established that. Well, it only allows a prosecution to use a court order psychiatric interview to provide rebuttal to the psychiatric defense. Is that correct? Which case are you citing to Gibbs? Yes. Well, first of all, Gibbs versus Frank is a Third Circuit case, not a United States Supreme Court. I got it. And in that case, yes, they did say that you can use it for rebuttal. And in that case, it's distinguishable from our case because the evidence there was used in the case in chief here. It's being used for rebuttal purposes. And under the law, under the state and federal law, impeachment as evidence is, in fact, permitted in these types of cases. So the defendant relies, again, as I said, primarily today on Buchanan. Interestingly, and part of the reason why I did a motion to supplement the appendix was to include the defendant's brief to the Pennsylvania Supreme Court, because in that brief, the defendant admits that Buchanan does not discuss the precise issue raised in this case. So, therefore, the defendant is conceding that that's not clearly established federal law with respect to this case. This is a tough and it's a nuanced and it's a close issue. Otherwise, you wouldn't have had a dissent on the Pennsylvania Supreme Court. Right. Correct. Correct. So. So what is the. What are you saying that. Currently is established Supreme Court law and how does that. Not apply to this case. In what case established. Yes. Well, I want to talk about Buchanan first, if I may, because that's the case that I indicated the defendant primarily relies on. In that case, the parties jointly petitioned the court to order a psychiatric examination of the defendant. The defendant raised a mental health defense, a trial, and the Commonwealth used the psychiatric report and rebuttal. And as Judge Fitz was questioning petitioner's counsel regarding whether or not Buchanan imposed a limit or whether it was just an example. And I would submit that was just an example of what can or cannot be done. It wasn't limiting the Commonwealth from presenting evidence only in rebuttal of a mental health defense. And the language that I cite, too, is the at the very least language that the court used that Judge Fitz indicated. The court held in that case that the Commonwealth's introduction of a psychiatric report for the limited rebuttal purposes did not constitute a Fifth Amendment violation. Where the defense asserted the defense placing his mental health and issue. But it did not limit it to that because in so holding the court noted that this conclusion, and I quote, logically leads to another proposition. If a defendant requests such an evaluation or presents psychiatric evidence, then at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested. So in using the phrase at the very least in describing what the prosecution may do with the evidence from the psychiatric report, I would submit that the court is leaving open the possibility of the prosecution using this type of evidence as rebuttal evidence when mental health is in fact no longer an issue. Make it simple for me. When does the waiver of mental status defense in the first trial carry over to the second trial? When it's not a defense. Your Honor, I would submit that this or you can phrase it the opposite. Yeah. When is the waiver of the defense of mental status carry over when it's not raised in the second trial? I would submit it carries over in this case because the defendant voluntarily chose to pursue a mental health defense in this case in the first trial in the first trial. As a result of that, he spoke to the Commonwealth expert, never asserted any Fifth Amendment rights against self-incrimination. The Commonwealth was permitted to call its experts. And I would submit the defendant can't take back that waiver. It's not a limited waiver. So we can't take it back for the second trial. And the defendant offers no clearly established federal press or Supreme Court precedent to the contrary. And the evidence that the Commonwealth did, in fact, seek to introduce what relevance in the second trial with a wholly different defense. Would the testimony in rebuttal or otherwise of Michael's? What would it what would be brought in from Michael's? It would be general impeachment evidence and most of the evidence that Dr. Michaels had from his conversation with the defendant was the same type of evidence that the defense that the Commonwealth had from Dr. Fink, the defense expert who also examined the defendant. And the defendant is not raising any challenge here to Dr. Fink's testimony or evidence regarding statements made to Dr. Fink. The defendant is only challenging statements he made to Dr. Michaels. So what is the gap that you say? Despite all the cases is not covered by those cases. The defendant has not put forth any clearly established baseball saying the Commonwealth may not use information they obtained from the defendant following his failure to invoke any privilege, any Fifth Amendment waiver privilege. He's not put forth any case that says the Commonwealth may not use the evidence they received from a defense. The defendant voluntarily disclosed in rebuttal evidence second time around. And I do want to address Commonwealth excuse me, the Gibbs case that the defendant also relies on. I know, Your Honor, Judge McKee, you were in fact on the panel in this case. And as I already pointed out, that's not clearly established federal law with all due respect to Your Honor and the duties of this court. It was a Third Circuit case. And in any event, that case is distinguishable because that case, the Commonwealth put the evidence in in the case in chief. In our case, the Commonwealth sought to put the evidence in in rebuttal, not the case in chief. And I do I do want to backtrack a little bit. And I raised this in my brief. While the defendant is, in fact, raising Fifth Amendment claims and there is, in fact, a Fifth Amendment implication here. Quite frankly, this is nothing more than a standard evidentiary matter. So I would submit that initially this claim is not cognizable on federal habeas suit. That I don't understand at all. What do you mean by that? Well, Your Honor, he's simply challenging an in limine ruling, which is which is quite frankly in the auspices of or the duties of the trial court to rule on the admissibility of the evidence. So I would submit that it's. But if the in limine ruling is based on Fifth Amendment, doesn't that kind of get us to a constitutional issue? I mean, if it was just an ordinary in limine ruling like a 403 ruling or something like that, maybe so. But if it implicates constitutional concerns, I mean, you know, it kind of seems weird to say there was an evidentiary ruling. At one level, it was only an evidentiary ruling, but wasn't it animated at least in part by the scope of what the Fifth Amendment protects and doesn't protect? I think a motion to suppress a ruling, a motion to suppress, that's just evidentiary. It doesn't implicate the Fourth Amendment. It does, to an extent, obviously implicate the Fourth Amendment. However, as it was raised in the trial court, it was part Fifth Amendment and part patient or psychiatrist patient privilege. So I would submit in that regard, it's it's not constitutional in that regard. Correct. But but it's still it doesn't seem that you could reach this ruling without at least some consideration of the bounds of the Fifth Amendment. And that seems to be the thread that you can pull and say it's not just an evidentiary ruling. And even if this court deems it's not merely evidentiary ruling because of the Fifth Amendment aspect of it, I would say you can't establish that the court did not. The state courts did not reasonably apply United States Supreme Court precedent. And I do want to address defendants claims in his brief regarding the lack of Miranda warnings. And that's part of the reason I submitted my motion to supplement the appendix. And then I believe this court in an order indicated that it would be deemed a motion to supplement the record. So I'd be more than happy to address that. But in terms of the substance, part of the reason why I did that motion to supplement the record was, number one, to bring in the defendant's Supreme Court brief, which wasn't in the actual appendix submitted by a petitioner, which basically they established or they avert that you can. And it's not does not address the precise issue raised here. And then also I wanted to introduce the report of Dr. Michaels, which is in part an issue here because there are numerous vermin from the petitioner in the brief that there's no evidence of any warnings being given to the petitioner. And in fact, I was in the report that I proffered, which was referred to on the record numerous times by both the prosecution and the defense during the examinations of Dr. Michaels. Dr. Michaels expressly told the defendant at the outset of the interview that he did not have to speak to him. But if he did, anything he said could be used at trial. So I did he say that second part? The exact language I mean, I don't want to pretend to have comprehensive knowledge of the record in this case, but but I'm not. I know that some degree of warning was given. I'm not sure that it said the second part. OK, I'll get to that. And by the way, his attorney was with him, and that's on the record in the case in the transcript that his attorney was with him during the meeting of the meeting with Dr. Michaels. He said he informed the petitioner that he had the right to refuse to answer any and all of our questions, that a report would be forwarded to your office. You meaning the prosecutors and we could we meaning Dr. Michaels and the other expert that was there. We could be called to testify in this matter. So, no, you're correct. He did not say at trial, but we could be called to testify in this matter. And and so I'm asking this court to consider that. And but to the extent that the defendant is claiming, as he does in his brief, that there is a lack of Miranda warnings, at least according to the record. I would submit that this variant of the claim is waived as procedurally defaulted. The first time the defendant ever made reference to any lack of Miranda warnings was in his brief to this court. It was not raised in the state courts. It was not raised in the trial court. And in the habeas in the actual district court opinion, the defendant simply took issue with the court, allowing the testimony where no mental health defense was at issue. And here are the statements were compelled without any analysis. He had no discussion whatsoever or any statements about there being given no Miranda warnings. So to the extent that the defendant is now injecting that variant of this claim, I would submit the claim is procedurally defaulted and shouldn't be considered by this court. But if, in fact, this court does consider that variant of the claim, I would ask the court to actually consider my motion to add this report of Dr. Michaels into the record in this case. I do want to talk about the statements themselves, because I know part in the certificate of appeal ability grant. I know the court indicated for the parties to discuss whether or not the statements were compelled. I would submit that the statements to Dr. Michaels were not, in fact, compelled. And the Fifth Amendment protects and accused from being compelled in any criminal case to be a witness against himself. And the Fifth Amendment is not violated unless compelled statements are used against a defendant in a criminal case. Importantly, and as is distinguished in Buchanan, Frank v. Gibbs and Estelle, the cases cited primarily by the defendant, in every one of those cases, the statements at issue were actually introduced at trial. Here, the purportedly offending statements were never introduced at trial. And that's one of the components of there needing to be a Fifth Amendment violation. The statements need to be introduced against the defendant in a criminal case. So even if a court says they can come in at trial, that's not good enough? I would submit that's not good enough, Your Honor. And I know the defendant does cite to New Jersey v. Portash in his contention that that's not correct, that even though if the court makes this conditional ruling, that that still can, in fact, be a Fifth Amendment violation. I would submit, number one, that that case was a United States Supreme Court case back from 1979. I guess in the cases I rely on, on my brief, Chavez v. Martinez, were later cases in the, I think, 2005 with Chavez v. Martinez, which expressly holds in no uncertain terms that the statements must be used against a defendant in trial. So to the extent that that's conflicting with New Jersey v. Portash, I would submit that Chavez v. Martinez is not correct. Chavez v. Martinez controlled, and in any event, Your Honor, the New Jersey v. Portash is also distinguishable, because the evidence at issue there was, in fact, compelled testimony. And in that case, when the defendant gave his grand jury testimony, prior to doing so, he was expressly informed by the prosecutor that any statements he said, what he was, initially he was going to invoke his Miranda rights, but then there was an agreement amongst his attorney and the prosecutor. And the prosecutor in Portash expressly said that anything you say in this grand jury will not be used against you in a subsequent trial. And in that case, the court made a ruling that, in fact, the statements would be able to be used against the defendant. So they weren't introduced as in our case, but they were clearly compelled, and there was no evidence to the contrary that they were not, in fact, compelled. So in addition to the statements not being used against the defendant at trial, he never used those statements. He never invoked the privilege. So that's another requirement that wasn't met in this case. That was covered in your briefs, right? Yes, Your Honor. And again, this was just conditional use of statements, and it was admissible solely for impeachment purposes. And the defendant, what, in my opinion, what he's trying to do here is use the Fifth Amendment as a sword, not a shield. That's, he's trying to insulate himself for perjury. That's not the purpose of the Fifth Amendment here. And I would submit the defendant has forwarded... Isn't the crux of your argument that there are things that the Supreme Court hasn't decided, and therefore the law is not clearly established? Correct, Your Honor. I'm sorry. I think there are times when a Supreme Court decision will come down, and there's genuine confusion as to what it means. I think clearly this Court got it right in Gibbs as to Buchanan. And I'm going to tell you why you can be absolutely certain you got it right. This is the Supreme Court achiever. Can I take notes on this? Tell me why. I deserve that, so I take it, and I apologize for the comment. But this is what the Court said in Cheever. We have held that testimony based on a court-ordered psychiatric evaluation is admissible only, they didn't emphasize only, but I am, only for a limited rebuttal purpose, citing Buchanan. So you got it right, you were correct, that's what Buchanan says, and you know it's what Buchanan says because that's what Cheever says. And Cheever didn't say, we're extending Buchanan, we're extrapolating for Buchanan. They said, they called it the rule of Buchanan. And the limited purpose, which this Court got right, is to rebut a psychiatric defense. It's not about perjury, and the ad hominesque aspect of that I will disregard. It's about what the Fifth Amendment means, and it means that you cannot be compelled to be a witness against yourself. And that carve-out is only in the case of the psychiatric expert defense. The other points that my worthy opponent made... What about Harris? Right, Harris was a case where the Court recognized that we have this prophylactic rule, and this is in the language of the opinion. We have this prophylactic rule, and the rule is there to deter police misconduct. So we need to gauge whether we want to apply that rule to allow a preclusion of the use of psychotic drugs. This is the defendant's pretrial hearing testimony. There was no issue of traditional voluntariness. There was no issue of compulsion. It was only a Fifth Amendment issue as far as, is this a prophylaxis that we need to apply to this extent? This case is different. The Commonwealth says that there was no compulsion. Well, that's not what they said before the Pennsylvania Supreme Court. They conceded compulsion. That's not what the Pennsylvania Supreme Court said. The Pennsylvania Supreme Court said correctly that these statements are compelled. Why are they compelled? Because New Jersey v. Portash tells us that if there is a coercive sanction attendant to the giving of a statement, it's a compelled statement. What did the court in Cheever say? And I know it's post this case, but I'm just trying to make it clear that it's so clear that this kind of statement is compelled. They found that this kind of interview by a Commonwealth or a government expert is compelled. What did this court find in Gibbs? Compelled. It's all over the opinion, and this court found equivalent what the Texas court required in Estelle v. Smith in that death case, and what the Philadelphia common police court did in the Gibbs case in making the defendant sit for Dr. Sadoff. There was an equivalency, so there's no question about compulsion here. That's the distinction, and it's, you know, the interest is not, you know, the interest is not about the truth-seeking function. The interest is about, in this case, about a defendant's right to remain silent, and the notion that if we're going to abridge that, go ahead, I'm sorry. I'm sorry for repounding. But what about, you know, before you talk about compulsion, what about the counterpoint that this is procedurally defaulted? You want to talk to that? Well, I don't think, did she argue that the compulsion argument is procedurally defaulted? Well, it's not. I mean, it's argued below, I'm not worried about that. I don't think the Miranda point is procedurally defaulted either, but the only reason I didn't want to wade into that is I only had 15 minutes, and, you know, they filed this motion. You know, because there was no privilege issue in regard to the defense expert, and this actually was the basis of this very unusual prejudice determination by the Pennsylvania Supreme Court. It wasn't a classic prejudice determination, the Superior Court made one. They said if there was error in this ruling, the error could not have been harmless because it kept this guy who was going to tell his story off the stand. We had to have found harm. The Pennsylvania Supreme Court took a completely different approach. They said both these experts would have said the same thing, so it wouldn't have made a difference if, you know, because Fink's testimony, the defense expert's testimony would come in, what difference would it make if Michaels came in? And that is... Do cover that point in your brief. You know what, it's in the record, I missed points that Michaels made that were garden variety impeachment. The three, it will take me 20 seconds. One, that he had sexual problems with his wife, that was going to come out because it would have come out as motive. That she would only have sexual relations if he stopped smoking marijuana. Garden variety impeachment would have gone to motive. That he was unaccustomed to having demands put upon her, that the police made stories to frame him. So all of this garden variety impeachment that only came in because he made this limited waiver, that was going to come in at a retrial. That is a violation of the Fifth Amendment. Thank you, counsel, very fine argument on the part of both counsel. As I said, Mr. Schwartz, I've seen you, not in this context, but trying cases many times, you're as fine an appellate attorney as you are a trial attorney. It's nice to see you.